UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT WALSTON, | ) | 07 CR 580-5 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| LORENA WALSTON, individually and in her | ) | |
| capacity as an officer and sole shareholder of | ) | |
| LNW Financial, Inc., a dissolved Illinois | ) | |
| corporation, | ) | |
| | ) | |
| Third Party Citation Respondent. | | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on several motions of the United States of America (the "United States"). The United States filed a petition for relief against Third Party Citation Respondent Lorena Walston ("Lorena"), individually and in her capacity as an officer and sole shareholder of LNW Financial, Inc. ("LNW Financial"), a dissolved Illinois corporation, pursuant to Federal Rule of Civil Procedure 69 and Illinois Code of Civil Procedure Section 2-1402. The United States also filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the United States' motions are granted.

# BACKGROUND[1]

This case arises from a conspiracy to conduct an illegal union election. From around August 2004 to around May 2005, Robert Walston ("Robert") and others conspired to conduct an illegal union election of Local 743 of the International Brotherhood of Teamsters (the "Union") by stealing election ballots and casting fraudulent votes. The illegal conduct ensured the re-election of the incumbent officers, including Robert, which guaranteed them salaries, benefits, and expenses from January 1, 2005, to December 31, 2007. As a benefit of his employment with the Union, Robert had a pension fund with the Employees Pension Plan of Local 743 IBT ("IBT Pension").

Before the relevant conduct in this case, in 2003, Robert had purchased and received fee simple title as an unmarried man to a single family residence in Chicago, Illinois (the "Residence"). After the relevant criminal conduct in this case, in early 2007, Lorena moved from Mexico into the Residence and married Robert. From the time Lorena moved to the United States in 2007 until Robert was sentenced in 2009, Lorena was unemployed and had no property, assets, or resources of her own. In

---

[1] Lorena did not oppose the United States' statement of material facts. Accordingly, all facts set forth in the United States' statement of material facts are deemed admitted. N.D. Ill. L.R. 56.1(b)(3)(C).

May 2007, Robert individually took out a mortgage on the Residence in the amount of $85,000, made payable to Rogelio Llamedo, an individual.

In September 2007, an original indictment was publicly filed against Richard Lopez, Cassandra Mosley, Mark Jones, and David Rodriguez. The indictment alleged that these individuals, who were employed by the Union, knowingly conspired with each other and with others to defraud the Union and its members. Robert knew of a civil investigation by the United States Department of Labor, Office of Labor Management Standards, as early as February 2005. On or about September 1, 2007, and around the time of the public indictment, Robert withdrew the full amount of $951,366.16 from his IBT Pension.

In March 2008, a superseding indictment charged Robert with conspiring with those named in the original indictment. On March 23, 2009, pursuant to a written plea agreement with the United States, Robert entered a plea of guilty to conspiracy to commit mail fraud and to embezzle/steal property from a labor organization in violation of 18 U.S.C. § 371, and theft from a labor organization in violation of 29 U.S.C. § 501(c). In the plea agreement, Robert acknowledged that he would be obliged to pay restitution, although he disagreed with the amount of $2.2 million, as calculated by the United States.

After Robert received his lump sum IBT Pension distribution, he used part of the funds to remodel the Residence. Then, in June 2008, three months after Robert was indicted, Robert used some of the funds to pay off two mortgages on the Residence, one for $85,000 and another for $200,000. From 2003 until after Robert pleaded guilty in 2009, title to the Residence and any promissory notes secured by mortgage liens on the Residence were held solely in Robert's name. On or about March 30, 2009, just seven days after pleading guilty in this case and years after Robert married Lorena, Robert transferred his interest in the Residence to himself and Lorena as a tenant by the entirety via a quit claim deed. At the time of the transfer, the Residence was unencumbered and had a value in excess of $200,000. Robert continued to reside at the Residence until his incarceration in February 2010.

In May 2009, within two months of pleading guilty, Robert deposited $150,000 of the IBT Pension funds into an account held by LNW Financial, a now-dissolved corporation that Robert set up to hold the transferred funds. Lorena is the sole officer and shareholder of LNW Financial. As of June 30, 2011, the account had a balance of $229,759.11, subject to market fluctuation.

No value or consideration accompanied either the March 2009 transfer of the Residence or the May 2009 transfer of the IBT Pension funds to LNW Financial. The transfers rendered Robert insolvent. At the time of the transfers, Robert had some cash

and other assets of no more than $112,635. Based on his plea agreement, Robert knew or should have known at the time of the transfers that he faced forfeiture and restitution claims in excess of $2.2 million. After the transfers, Robert had only a half interest in the Residence, monthly pensions in the amount of $2,531.34, and monthly distributions from the Social Security Administration in the amount of $1,881.

On September 3, 2009, this Court sentenced Robert to 57 months in prison and ordered Robert to pay restitution in the amount of $900,936 to the Union. On October 22, 2009, the United States recorded a notice of lien to reflect the statutory lien that arose upon all of Robert's property and rights in property pursuant to 18 U.S.C. § 3613. As of July 19, 2011, Robert owes $889,623.55 in restitution.

The United States filed a petition for relief against Lorena and an unopposed motion for summary judgment seeking avoidance of Robert's fraudulent transfers and a money judgment against Lorena.

## LEGAL STANDARDS

**I.     Summary Judgment**

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material

fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party.  *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010).  A court construes all facts and draws all reasonable inferences in favor of the non-moving party.  *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

**II.      Enforcement of Judgment**

The Mandatory Victims Restitution Act ("MVRA") requires a defendant convicted of certain crimes to make restitution to the victims of the offense in an amount equal to the value of the property damaged or lost.  18 U.S.C. § 3663A.  An order of restitution in a criminal judgment creates a "lien in favor of the United States on all property and rights to property of the person fined."  18 U.S.C. § 3613(c).  The Federal Debt Collection Procedure Act ("FDCPA") provides the United States with a civil cause of action when a criminal judgment debtor transfers property before satisfying a restitution obligation.  28 U.S.C. §§ 3001, 3304.

**DISCUSSION**

The United States argues that Robert fraudulently transferred property to Lorena without consideration, including an equity interest in the Residence and $150,000 deposited into an account held by LNW Financial, which has since grown to $229,759.11.  To establish a fraudulent transfer by a criminal judgment debtor, the government must show that the debtor transferred property: (1) with actual intent to

hinder, delay, or defraud a creditor; or (2) without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due. 28 U.S.C. §§ 3304(b)(1)(A), (b)(1)(B)(ii).

The United States first argues that Robert violated 28 U.S.C. § 3304(b)(1)(A) by transferring property to Lorena with the actual intent to hinder, delay, or defraud a creditor.[2] In determining Robert's actual intent, the Court considers relevant statutory factors, including whether he transferred the property to an insider, retained possession or control of the property after the transfer, was sued or threatened with suit before the transfer, transferred substantially all of his assets, received reasonably equivalent value for the transfer, was insolvent or became insolvent after the transfer, and made the transfer shortly before or after incurring a substantial debt. 28 U.S.C. § 3304(b)(2).

Based on an analysis of the statutory factors, the undisputed facts demonstrate that Robert had an actual intent to defraud the United States. Robert transferred the property to an "insider," Lorena,[3] retained possession over the Residence after the transfer until his incarceration, was indicted before transferring the property and knew

---

[2] The United States is a creditor because it had a right to payment, even though the right was not reduced to judgment at the time of the transfers. 28 U.S.C. §§ 3301(3)-(4) (defining "creditor" and "claim").

[3] Richard's relatives qualify as "insiders." 28 U.S.C. § 3301(5).

that prosecution was imminent, plead guilty shortly before transferring the property and knew that sentencing was imminent, transferred substantially all of his assets to Lorena, received nothing in exchange for the transfers, rendered himself insolvent in light of his restitution liability, and made the transfers shortly after pleading guilty to offenses for which restitution is mandatory. Because Robert had an actual intent to defraud the United States, the transfers were fraudulent under 28 U.S.C. § 3304(b)(1)(A).

Alternatively, the United States argues that Robert violated 28 U.S.C. § 3304(b)(1)(B)(ii) by transferring property to Lorena without receiving a reasonably equivalent value in exchange for the transfers and Robert intended to incur or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due. The undisputed facts demonstrate that Robert received no money or value in exchange for the transfers, let alone reasonably equivalent value. Moreover, the undisputed facts show that Robert transferred the property at a time when he reasonably should have believed that he would incur debts beyond his ability to pay as they became due. Robert transferred the property shortly after pleading guilty to offenses for which restitution is mandatory and with knowledge that the Government calculated approximately $2.2 million in forfeiture and restitution claims. Thus, the transfers were fraudulent under 28 U.S.C. § 3304(b)(1)(B)(ii).

For the reasons stated above, the Court avoids the fraudulent transfers and enters judgment in favor of the United States and against Lorena for the value of the assets transferred. 28 U.S.C. §§ 3306(a)(1), 3307(b). The value of the assets is the value at the time of the transfer, subject to adjustment as the equities may require. 28 U.S.C. § 3307(c). Here, Lorena acquired an interest in the residence worth $103,500. Further, Lorena acquired $150,000 deposited into the LNW Financial account, which has since grown to $229,759.11. The equities weigh in favor of awarding to the United States the interest Lorena earned on the fraudulently transferred funds. Accordingly, the Court enters a money judgment against Lorena in the amount of $333,259, which represents Lorena's equity interest in the Residence and the funds in the LNW Financial account.

## CONCLUSION

For the foregoing reasons, this Court grants the United States' petition for relief against Lorena and motion for summary judgment. Additionally, the Court enters Judgment against Lorena Walston in the amount of $333,259.

*Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

Dated:  August 31, 2011